## L. A. REYNOLDS COMPANY v. STATE HIGHWAY COMMISSION.

(Filed 24 July, 1967.)

**1. Appeal and Error § 57—**

An exception to a finding of fact which is not material to the decision will not be sustained.

**2. Highways § 8.1— Limitation on filing of claim on highway contract does not begin to run until Commission tenders unconditional payment.**

The evidence disclosed that the Highway Commission sent its contractor a warrant for the balance of the contract price less an amount withheld as liquidated damages, with a letter characterizing the payment as "final payment of the contract," that the contractor returned the warrant with request that it be reissued without words jeopardizing the contractor's right to assert that no liquidated damages should have been withheld. *Held:* Final payment was received by the contractor within the purview of G.S. 136-29(a) upon the date the contractor received the letter returning the warrant with notation permitting its negotiation without jeopardizing the contractor's claim, and the filing of claim by the contractor within sixty days thereafter was within the time limited.

**3. Trial § 56—**

Where the court is authorized to find the facts without a jury, the weight and credibility of the evidence is for the court, and the court properly denies motion for involuntary nonsuit when conflicting inferences may be drawn from the evidence.

**4. Contracts § 30—**

Contract provisions for liquidated damages for failure to complete the work under the contract within the time specified may not be asserted when the party claiming the damages is responsible for the delay.

**5. Highways § 8.1— Where delays in completing contracts are due to mutual defaults, court will not ordinarily apportion damages.**

In this action to recover the amount deducted by the Highway Commission from the contract price as liquidated damages, computed on a per diem basis, for delays in completing the work, there was evidence of substantial delays resulting from revisions and alterations of the plans by the Commission and delay resulting from the Commission's failure to remove a certain power line which interfered with the performance of the work. *Held:* The evidence is sufficient to support a finding by the trial court that the contractor's failure to complete the contract within the time specified was caused in large and substantial part by the Commission, so that an assessment of liquidated damages by the Commission was not lawful, and the contractor is entitled to recover the amount withheld, with interest.

**6. Appeal and Error § 57—**

Where the judgment is supported by correct conclusions of law supported by evidence, the correctness of another conclusion of law need not be determined upon appeal.

**7. Interest § 1;    State § 6—**
    The State is not liable for interest unless payment of interest is authorized by statute or lawful contract.

**8. Same;    Highways § 8.1—**
    Where the contract for highway construction provides that the Commission should pay interest at the rate of 5 per cent on the amount still due on the contract 90 days after the project is completed and accepted, the contractor is authorized to collect interest on such amount beginning 90 days after the Commission accepts the work.

THIS is a civil action arising out of a highway construction contract. Docketed and argued as Case No. 523, Fall Term 1966. Docketed as Case No. 524, Spring Term 1967.

Appeal by defendant from an order entered by *Copeland, S.J.*, at 7 March 1966, Civil Non-Jury Session of WAKE, denying a motion by defendant to dismiss plaintiff's complaint on the ground that plaintiff did not comply with the provisions of G.S. 136-29 with respect to filing a written and verified claim with the Director of the State Highway Commission for $16,400, the amount it deems itself entitled to under the said contract, within sixty (60) days from the time of receiving its final estimate.

Appeal by plaintiff and defendant from a judgment entered by Bone, E.J., at 16 May 1966, Civil Non-Jury Session of Wake, adjudging and decreeing that plaintiff have and recover from defendant the sum of $16,400, with interest thereon from the date thereof, and the costs.

*Hatfield, Allman and Hall by Weston P. Hatfield, Albright, Parker and Sink by R. Mayne Albright for plaintiff appellee and appellant.*

*Thomas Wade Bruton, Attorney General, Harrison Lewis, Deputy Attorney General, and Eugene A. Smith, Trial Attorney, for defendant appellant and appellee.*

PARKER, C.J.  On 27 February 1962, plaintiff and defendant entered into a written contract, whereby plaintiff agreed to build the roadway and structures for 4.37 miles of roadway on relocated U. S. 52 in Forsyth County, according to specifications for Project No. 8.17374, for the sum of $1,580,628.17. Completion date for the project was, as set out in the contract, 1 March 1963, and liquidated damages at the rate of $400 per calendar day were to be assessed for any additional time required beyond the said completion date. Plaintiff completed the work on 24 May 1963, eighty-four days after the contract completion date.

The actual paving of the roadway was to be done under the terms of another contract on the same project, and the completion date as established by that contract was 1 October 1963. Plaintiff was a subcontractor on the second portion of the project. The road was finally completed and opened for public use on 18 October 1963, although a portion of the road was actually opened in September, 1963.

On 26 July 1963, plaintiff wrote defendant stating that the work had been delayed in completion because of acts of defendant in failing to have rights of way properly cleared so that plaintiff's crews could work on the job in accordance with the plan under which they submitted their bid, and acts of commission by defendant in inaccurately designing certain features of the project with the result that the designs had to be changed while the job was in process and plaintiff was delayed by defendant while such design changes were being made. Plaintiff stated that the acts of defendant had delayed plaintiff a total of 228 days on the project.

On 25 September 1963, defendant, responding to plaintiff's letter, agreed to an allowance of twenty-four additional days, among other things stating that some of the delays referred to in plaintiff's letter overlapped with other delays. This letter was signed by defendant's resident engineer on the project.

Subsequently, the resident engineer's recommendation of twenty-four days was extended by the defendant an additional nineteen days, for a total of forty-three days, and the plaintiff was assessed liquidated damages of 41 days at $400 per day, or a total of $16,400.

On 13 January 1964, defendant mailed to plaintiff a letter of "final estimate" and a warrant drawn on the State Treasurer for the balance remaining to be paid on the said project, less the sum of $16,400, a total of $24,361.43, together with an accompanying letter characterizing such payment as ". . . final payment of this contract." Plaintiff received this letter and warrant on 14 January 1964.

On 22 January 1964, plaintiff wrote the defendant a letter enclosing its warrant on the State Treasurer for $24,361.43, stating: ". . . (W)e feel that, taking the language of your letter of January 13 referring to this warrant as 'final payment of this contract', when read in conjunction with the notation on the warrant itself, might foreclose us from any further attempt to get this matter concluded on a more favorable basis for us. Accordingly, we would be very grateful if you would modify the wording on the warrant by using some such language as 'final estimate No. 19, less liquidated damages as claimed by Highway Commission.' We also would appreciate your writing us in language to the effect that the State is on notice of our claim and that negotiation of this warrant will not constitute any release by us of claims which we may have against

the State by reason of this imposition of liquidated damages." This letter also set forth contentions of plaintiff with respect to the merits of its case.

On 24 January 1964, defendant, by John H. Davis, State Construction Engineer, mailed a letter to plaintiff and in it returned the warrant for $24,361.43. This letter stated: "The acknowledgment of receipt and the negotiation of this warrant will not constitute any release by you with respect to any action you may desire to take as provided under the statute." This letter and warrant were received by plaintiff 25 January 1964.

On 20 March 1964, and by verified petition received in defendant's offices on 23 March 1964, the plaintiff filed a written and verified claim for $16,400 with the defendant, such petition setting forth in detail the facts upon which it based its claim for $16,400. This claim was rejected by defendant, and this action was instituted in the Wake County Superior Court by the issuance of summons on 18 August 1964, which summons was duly served on defendant.

On 15 September 1964, defendant filed in the office of the clerk of superior court of Wake County a motion and an answer. In its motion it moved that plaintiff's complaint "be dismissed upon the ground that the court does not have jurisdiction of the subject matter of the action", and in support of its motion defendant alleged, in summary, except when quoted:

(a)   That this proceeding is an appeal under G.S. 136-29 from a decision of the Director of the State Highway Commission;

(b)   That subsection (a) of G.S. 136-29 provides, in part, as follows:

"Upon the completion of any contract for the construction of any State highway awarded by the State Highway Commission to any contractor, if the contractor fails to receive such settlement as he claims to be entitled to under his contract, he may, within sixty (60) days from the time of receiving his final estimate, submit to the Director of the State Highway Commission a written and verified claim for such amount as he deems himself entitled to under the said contract setting forth the facts upon which said claim is based.";

(c)   That subsection (d) of G.S. 136-29 is as follows:

"The submission of the claim to the Director of the State Highway Commission within the time and as set out in subsection (a) of this section and the filing of an action in the superior court within the time as set out in subsection (b) of this section shall be a condition precedent to bringing such

an action under this section and shall not be a statute of limitations.";

(d)    That a "final estimate" of the work was mailed to plaintiff on 13 January 1964 and was received by it on 14 January 1964; and

(e)    That plaintiff did not submit to the Director of the State Highway Commission a written and verified claim for the amount to which it deemed itself entitled, prior to 23 March 1964, on which date defendant received from plaintiff a petition setting forth plaintiff's claim, and therefore plaintiff has not complied with the condition precedent of submitting its written and verified claim within the 60-day period provided for in the statute.

In its answer, defendant denied the material allegations of the complaint, and alleged that the plaintiff's complaint should be dismissed and that plaintiff should recover nothing in this action.

Plaintiff filed a reply to defendant's motion to dismiss and answer, alleging in substance that the 60-day period did not, in contemplation of law, begin to run until 25 January 1964, when it received the final estimate and warrant the second time in a letter from defendant.

APPEAL BY DEFENDANT FROM ORDER OF JUDGE COPELAND.

Defendant's motion to dismiss plaintiff's complaint came on to be heard by Copeland, J., at the 7 March 1966, Civil Non-Jury Session of Wake. Based upon documents entered into the record by stipulation of counsel and argument by counsel for each side, Judge Copeland made findings of fact substantially as set forth above. Based upon his findings of fact, he made the following conclusions of law, which we summarize, except when quoted, the numbering of the paragraphs being ours:

(1)    "The plaintiff has complied with the requirements of G.S. 136-29 by filing its claim with the defendant within sixty days from the time of receipt of final estimate, the court being of the opinion that the phrase '. . . sixty days from the time of receiving his final estimate . . .' refers to the receipt of such an estimate as would permit the claimant to negotiate any warrant accompanying the estimate without prejudice to the right of such claimant to assert its claim for additional funds against the defendant. The language used by the defendant in its letter of January 13, to the effect that the accompanying warrant was 'final payment of this contract' put plaintiff to the choice of either negotiating the warrant to the

possible prejudice of its claim against defendant, or of returning the warrant to the defendant with the request that defendant assure plaintiff that the warrant could be negotiated without prejudice, and therefore the receipt by plaintiff of defendant's letter and warrant on January 14, 1964, was not such 'receipt' as, in the opinion of the court, is contemplated by the statute."

(2)  The date on which plaintiff "received" defendant's final estimate and warrant, within the meaning of G.S. 136-29 (a), was January 25, 1964, and plaintiff within sixty days thereafter filed its verified claim with defendant.

(3)  As plaintiff's letter of 22 January 1964 outlined the reasons why it felt defendant was in error in failing to allow its claim, it was in the nature of a petition for reconsideration and thus tolled the running of the sixty days pending action on the letter by defendant.

Based upon his findings of fact and conclusions of law, Judge Copeland entered an order denying defendant's motion to dismiss plaintiff's complaint.

Defendant assigns as error only one of Judge Copeland's findings of fact, and that is as follows: "On January 3, 1964, the parties conferred with respect to such claim, at which conference the defendant was fully advised of plaintiff's position concerning the claim involved in this lawsuit." This assignment of error is overruled, for the simple reason that it is not material to our decision.

The crucial words of G.S. 136-29, subsection (a), in deciding the appeal from Judge Copeland are as follows: "from the date of receiving his final estimate." Briefs of counsel and an exhaustive research on our part have not disclosed a case on all fours, and no decision in other jurisdictions construing substantially similar words in such a statute as ours has been discovered.

When plaintiff on 14 January 1964 received a letter of "final estimate", containing a warrant drawn on the State Treasurer for $24,361.43, the balance remaining to be paid on Project No. 8.17374 less the sum of $16,400 withheld as liquidated damages, together with an accompanying letter characterizing such payment as "final payment on the contract", plaintiff could not negotiate the warrant without seriously jeopardizing, or entirely barring, his claim that the withholding of alleged liquidated damages was unlawful. On 22 January 1964, plaintiff wrote defendant a letter enclosing the said warrant on the State Treasurer, stating in substance its desire that defendant be put on notice of its claim and that negotiation of the said warrant would not constitute any release by it of any claims that it may have against defendant for imposition of liquidated damages. On 24 January 1964, defendant, by John H. Davis, State Construction Engineer, mailed a letter to plaintiff returning the said

warrant. This letter stated: "The acknowledgment of receipt and the negotiation of this warrant will not constitute any release by you with respect to any action you may desire to take as provided under the statute." Plaintiff received this letter on 25 January 1964.

Considering the facts in this particular case, it seems to us clear that defendant, by its letter written on 24 January 1964, voluntarily waived its rights to contend that plaintiff received its final estimate on 14 January 1964 when it received defendant's letter of 13 January 1964. If defendant had delayed forwarding its permission to plaintiff that it could negotiate the warrant without prejudice to its rights for as long as sixty days, and then had forwarded the warrant to the defendant with the assurance that it could negotiate the same without giving up its rights under G.S. 136-29, it is probable defendant could have effectively barred the plaintiff from ever asserting its claim that the deduction of liquidated damages was improper. Facts constituting such a waiver appear in plaintiff's reply to defendant's answer. It seems to us, and we so hold, that the receipt of the letter from defendant by plaintiff on 25 January 1964 (the letter was mailed the day previous) constituted "his final estimate" within the meaning and intent of G.S. 136-29(a). Within sixty days after plaintiff received "his final estimate" on 25 January 1964, plaintiff submitted to the Director of the State Highway Commission a verified and certified claim for $16,400 on the ground that the imposition of such liquidated damages was improper as provided in G.S. 136-29(a).

The crucial facts found by Judge Copeland are set forth substantially in the pleadings, and such crucial findings of fact are not challenged by defendant, except in one particular instance as set forth above, which is immaterial. It is not necessary for us to decide whether Judge Copeland's conclusion of law No. (3) (the numbering of the paragraphs are ours) is correct or not. His crucial findings of fact support his other conclusions of law, and they in turn support his order denying defendant's motion to dismiss the complaint. All of defendant's assignments of error in the appeal from Judge Copeland are overruled. The order of Judge Copeland is

Affirmed.

APPEAL BY DEFENDANT FROM JUDGMENT OF JUDGE BONE.

G.S. 136-29(b) reads: "As to such portion of the claim as is denied by the Director of the State Highway Commission, the contractor may, within six (6) months from receipt of said decision, institute a civil action for such sum as he claims to be entitled to under said contract by the filing of a verified complaint and issuance of summons in the Superior Court of Wake County . . ." This

action was instituted in the Superior Court of Wake County on 18 August 1964.

This action came on to be heard upon its merits by Bone, E.J., at 16 May 1966, Civil Non-Jury Session of Wake County Superior Court. He heard it without a jury as he was authorized to do by G.S. 136-29(c). Plaintiff and defendant offered evidence. Judge Bone found facts substantially as set forth above, and in addition found that Judge Copeland had entered an order denying defendant's motion to dismiss the complaint.

Judge Bone found further facts in substance as follows: Plaintiff was substantially delayed by acts of defendant, and such acts were not denied by defendant, although with respect to certain acts defendant contended that the delays were of shorter duration than claimed by plaintiff. Among the delays sustained by plaintiff resulting from acts of defendant were these: (1) Defendant delayed its layout and measurement of the area required for the placing of sectional plate pipe at Station 542+30 of the project, and plaintiff was thereby prevented from performing critical work and following its program of work as originally planned for several days in May, 1962; (2) In April, 1962, plaintiff was prevented from working on a bridge installation, or at least on a portion thereof, by reason of defendant's failure to have removed from the working area a power line stretching across the road near the southernmost pier of the proposed bridge, which power line was about sixteen feet in height above the road, so that plaintiff could bring its cranes and other heavy equipment to work in the area of the bridge, which omission to act on defendant's part prevented plaintiff for a considerable number of days from working on its critical path in the said project in accordance with its original plan for completion of the job, most of which delay by defendant was unreasonable and substantially hindered plaintiff in the completion of the work required to be done by the contract; but the court was unable to determine from the evidence precisely how much this was reflected in the total time taken for plaintiff to complete the work; (3) A portion of plaintiff's work was to be performed on the northeast end of the reconstructed U. S. Highway 52, and power poles carrying a 12,470 volt electric system were in the right of way in which plaintiff was to perform its work; plaintiff notified defendant of the existence of these poles and requested defendant immediately to remove the poles so that it could work in the area and at the same time comply with its contract in permitting traffic to pass while work was in progress; U. S. Highway 52 at this point was the most heavily traveled north-south highway leading out of Winston-Salem; defendant failed to act, and plaintiff was compelled to work on the highway within twenty inches of the edge

of the road's surface, thus involving a hazard to its crew and personnel; and the court finds that plaintiff, by this omission of the defendant to act, was delayed in being able to enter upon said portion of the premises in accordance with its original plan for the work for several weeks in the spring and summer of 1962, and this conduct on the defendant's part substantially hindered plaintiff in the completion of the work; but the court was unable to determine from the evidence precisely how much this was reflected in the total time it took for plaintiff to complete the work; (4) In connection with the construction of the project, a lake had to be drained at Station 522+50, in preparation for building an inlet structure and placing a line of 54-inch pipe under the project main line; the original design for such lake drainage was inadequate in that the pipe as shown on defendant's plans and specifications was placed at too high an elevation to provide drainage of the lake; and this prevented plaintiff from working in this area while the plans were revised for several days by reason of this fault on the part of defendant; but the court was unable to determine from the evidence precisely how much time it was delayed; (5) In May, 1962, plaintiff discovered the existence of a 16-inch water line not shown on defendant's map, with reference to which plaintiff had bid on the project, which water line conflicted with the proposed grade of the roadway approaching the bridge; the water line served, among other things, an industrial plant near Winston-Salem; and plaintiff was delayed while plans were revised to take into account the existence of the water line; plaintiff's evidence tended to show that defendant should have known of the existence of the water line at the time the plans for the project were prepared, since it had an encroachment agreement in its division offices in Winston-Salem showing the existence of the water line and the location thereof; by reason of the fault of defendant in not showing this water line on its map, plaintiff was substantially hindered and delayed for several weeks in the performance of its work; but the court was unable from the evidence to determine precisely how much time it was delayed; and (6) By reason of improper design, the bridge located at Station 399 on said project had to be widened and otherwise altered from the original plans and specifications shown on the map under which plaintiff bid the job, and such alterations delayed plaintiff; but the court was unable to determine precisely from the evidence what specific period of time this delay covered.

The delays above set forth overlapped in some instances in point of time, but altogether these delays were substantial and prevented plaintiff from performing its work in accordance with the custom and usage of the construction industry in such cases and in accord-

ance with its plan of operation based upon defendant's plans and specifications under which the job was bid by plaintiff.

The court further found as a fact that the nature of such delays and the interrelationship thereof were such as to render it impossible to make any reasonable apportionment of the same as between plaintiff and defendant; that the unreasonable acts, negligence and omissions on the part of defendant caused a large and substantial portion of the delay of plaintiff in completing the contract.

Based upon his findings of fact, Judge Bone made the following conclusions of law; (1) In accordance with Judge Copeland's order, the submission of the claim involved herein to the State Highway Administrator was within the time set out in G.S. 136-29(a), and therefore defendant's plea in bar was properly denied; (2) The assessment of liquidated damages against plaintiff in this case, under all the facts, was not lawful and defendant was not entitled to withhold any sum of money from plaintiff on account of its claim for liquidated damages; (3) In a civil action brought by a contractor under G.S. 136-29, where the plaintiff contractor has shown a balance due him on the contract price for work done, and that defendant has withheld same from plaintiff upon a claim that it is entitled to liquidated damages in the amount so withheld for delay on the part of plaintiff in completion of the work and failure to complete same within the contract period, and plaintiff has shown further that a large part, if not all of such delay was due to the fault of defendant, the burden of proof is on the defendant to show that the delay on the part of plaintiff has caused some actual damage to defendant, and failing so to show, defendant is not entitled to withhold any sum of money as liquidated damages; (4) Since the delays of defendant are of such substantial nature running throughout the project, there was no proper basis upon which plaintiff is chargeable for any delay for which liquidated damages might be due, it being impossible to apportion the delay in this case between plaintiff and defendant. A mere extension of time does not of itself alleviate the problem of such delays, since a number of other factors is involved, including the problems faced by plaintiff in moving his men and equipment around and off his planned program of operation. It is impossible to set a date from which liquidated damages would begin to run after such delays had been encountered, particularly where, as here, the delays occasioned by the acts of the defendant were previous to the completion date set by the contract, and, therefore, the court concludes as a matter of law that the delays were of such a substantial nature as to make apportionment between the parties impossible and thus to nullify the liquidated damages clause contained in the contract, or, at least, to render its attempted enforcement unfair

and inequitable; and (5) Plaintiff is entitled to recover of defendant the sum of $16,400 as the balance due upon the contract price for the work done, with interest thereon from the date of this judgment, but is not entitled to recover interest for any time prior to the date thereof.

Based upon his findings of fact and his conclusions of law, Judge Bone ordered and decreed that plaintiff have and recover of defendant the sum of $16,400, together with interest thereon from the date thereof, and the costs.

Defendant assigns as error the denial by Judge Bone of its motion made at the close of all the evidence for judgment of compulsory nonsuit.

Considering plaintiff's evidence in the light most favorable to it, it is clear that the court correctly denied defendant's motion.

Judge Bone, as he was authorized to do by G.S. 136-29, subsection (c), was sitting without a jury, and consequently the weight and credibility of the conflicting evidence for plaintiff and defendant were for Judge Bone. It is well settled that when different inferences may be drawn from the evidence, the ultimate issue was for Judge Bone. 4 Strong's N. C. Index, Trial, § 56. Judge Bone's findings of fact are supported by competent evidence, notwithstanding that there is evidence *contra,* and are as binding upon the court as a verdict of a jury.

Obviously, as an elementary general proposition, a contractor is not liable under a clause for liquidated damages based on a time limit if his failure to complete the contract within the specified time was wholly due to the act or omission of the other party in delaying the work, whether by omitting to provide the faculties or conditions contemplated in the contract to be provided by him, or by those for whom he is responsible, or by interfering with the work after the contractor has begun, or otherwise. *Dunavant v. R. R.,* 122 N.C. 999, 29 S.E. 837; *United States v. United Engineering & Contracting Co.,* 234 U.S. 236, 58 L. ed. 1294; Anno. 152 A.L.R., p. 1350; 22 Am. Jur., 2d, Damages, § 233; 25 C.J.S., Damages, p. 1096. The concept of justice back of the decisions appears to be that the other party should not be allowed to recover damages for what he himself has caused.

In *United States v. United Engineering & Contracting Co., supra,* the Court said: "We think the better rule is that when the contractor has agreed to do a piece of work within a given time, and the parties have stipulated a fixed sum as liquidated damages, not wholly disproportionate to the loss for each day's delay, in order to enforce such payment the other party must not prevent the performance of the contract within the stipulated time; and that where such is the

case, and thereafter the work is completed, though delayed by the fault of the contractor, the rule of the original contract cannot be insisted upon, and liquidated damages measured thereby are waived."

Plaintiff's Exhibit No. 1, entitled in part "State of North Carolina, State Highway Commission, Raleigh — Proposal, Contract and Contract Bond", on page 4, in paragraph 8.7 "Liquidated Damages", contains this language: ". . . but no liquidated damages will be chargeable for any delay in the final completion of the work by the Commission due to any unreasonable action, negligence, omission, or delay of the Commission."

It is manifest from Judge Bone's findings of fact, which are supported by competent evidence, that unreasonable acts on the part of defendant of commission and omission wholly caused a large and substantial part of the delay on the part of plaintiff to finish the job within the time limit. He found that it was delayed by defendant several days in May, 1962; a considerable number of days in April, 1962; for several weeks in the spring and summer of 1962; for several weeks in May, 1962, in connection with the water line discovered by it; "but the court is unable to determine from the evidence precisely how much of this period was reflected in the total time it took for plaintiff to complete the work required by the contract."

Although there is authority to the contrary, the majority rule is that where a contract contains a provision for liquidated damages, and delays in its completion are occasioned by mutual defaults, the courts will not attempt to apportion the damages, and the obligation for liquidated damages is annulled in the absence of a contract provision for apportionment (and no provision in the contract here providing for apportionment of damages has been called to our attention, and we have found none), and according to some authorities, notwithstanding the contract itself provides in express terms for apportionment of the delay. 25 C.J.S., Damages, § 115, p. 1097; 22 Am. Jur., 2d, Damages, § 233; Anno. 152 A.L.R., p. 1359. It seems to us, and we so hold, that in the instant case where Judge Bone found as a fact that acts of commission and omission on the part of defendant wholly caused a large and substantial delay on the part of plaintiff to finish the job within the time limit, and none of the delay was caused by plaintiff, and that it is not possible from the evidence to determine precisely the length of time plaintiff was delayed, and plaintiff went ahead and fully completed the job on 24 May 1963, which was eighty-four days after the contract completion date, but defendant extended the contract completion date for a total of forty-three days, and defendant assessed liquidated damages for forty-one days, the obligation under the contract for liquidated damages was annulled.

Applying the relevant law to the facts found by Judge Bone, his conclusion of law that the assessment of liquidated damages against plaintiff under all the circumstances as found by him was not lawful and defendant was not entitled to withhold any sum of money from plaintiff on account of its claim for liquidated damages, and his conclusion of law (4) set forth above, are correct. Judge Bone's findings of fact and his above conclusions of law (2) and (4) support his judgment that plaintiff recover from defendant the sum of $16,400. Therefore, it is not necessary for us to pass upon the correctness or not of the challenged portion of Judge Bone's conclusion of law (3), reading as follows: "(T)he burden of proof is on the defendant to show that delay on the part of plaintiff has caused some actual damage to defendant, or the public, and failing so to show, defendant is not entitled to withhold any sum of money as liquidated damages."

Defendant assigns as error the provision in the judgment that plaintiff recover interest on the judgment for $16,400 from the date of the judgment.

We are concerned here, not with a case of defendant taking private property under the power of eminent domain, *Sale v. Highway Commission*, 242 N.C. 612, 89 S.E. 2d 290, but a civil action arising out of a highway contract. In the instant case we are confronted with the established principle that interest may not be awarded against the State unless the State has manifested its willingness to pay interest by an Act of the General Assembly, or by a lawful contract to do so. *Yancey v. Highway Commission*, 222 N.C. 106, 22 S.E. 2d 256.

The contract between plaintiff and defendant contains this provision as set forth in "Standard Specifications for Roads and Structures," which is part of the contract here, and marked Plaintiff's Exhibit No. 1:

> "Should final payment on this project not be made within ninety (90) calendar days after the project is completed and accepted by the Commission interest at the rate of five per cent (5%) per annum will be paid the contractor on the final payment for the period beginning ninety (90) calendar days after the project is completed and accepted and extending to the date final payment is made. . . ."

Plaintiff contends the defendant is bound by the above quoted provision of its contract to pay interest at 5% per annum beginning ninety days after 24 May 1963, or 22 August 1963. We agree with plaintiff's contention. Plaintiff completed the work on 24 May 1963, and it is reasonable to infer from the record that the High-

way Commission accepted it on that date. It is our opinion, and we so hold, the State has bound itself by the part of the contract above quoted to pay interest at 5% per annum for the period beginning 90 days after the project has been completed and accepted and to the date final payment is made.

A 1965 Amendment to G.S. 136-29, effective 1 July 1965, substituted "State Highway Administrator" for "Director of the State Highway Commission," in subsections (a), (b), and (d), and added "with the approval of the State Highway Commission" near the end of subsection (a). We have not taken into consideration these verbal changes in the statute for the reason that plaintiff instituted its action on 18 August 1964, and the pleadings are cast as the statute was at that time.

We have carefully considered all defendant's assignments of error on its appeal from Judge Bone, and all are overruled with the following exception: Judge Bone's judgment will be modified by deleting the words "with interest thereon from the date of this judgment, but is not entitled to recover interest for any time prior to the date hereof," and substituting in lieu thereof "with interest at the rate of 5% per annum from 22 August 1963 until paid."

Upon defendant's appeal from Judge Bone, the judgment is

Modified and affirmed.

APPEAL BY PLAINTIFF FROM JUDGMENT OF JUDGE BONE.

Plaintiff assigns as error Judge Bone's not incorporating in the judgment that it was entitled to interest at 5% per annum from 22 August 1963. This assignment of error is good, for the reasons above stated.

On plaintiff's appeal the judgment of Judge Bone is modified and affirmed as set out above.

Modified and affirmed.