E. Arthur HIGGINS, Plaintiff
and Respondent,

v.

CITY OF FILLMORE, Defendant
and Appellant.

No. 17018.

Supreme Court of Utah.

Dec. 28, 1981.

Jay V. Barney, David R. Maddox, Murray, for defendant and appellant.

Elliott Lee Pratt, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Plaintiff, a general contractor, brought an action against the City of Fillmore for breach of a construction contract. The City filed a counterclaim alleging it was entitled to liquidated damages because the contract was not completed within the time specified in the contract. The court ruled against the City on all counts and awarded plaintiff $78,120.08. The City appeals, asserting insufficient evidence to support à finding of breach.

On September 7, 1971, Higgins and the City entered into a written construction contract for the installation of a sewer system for the City of Fillmore. Higgins was a licensed and experienced contractor, having previously constructed various sewage systems, water systems, and sewage and water treatment plants. Under the terms of the contract, Higgins was required to complete the work within 180 calendar days of receipt of notice to proceed. The contract provided for liquidated damages of $50 each day beyond the contract completion date, but excused delays resulting from specific orders of the engineer, failure of the owner to provide the right of way, owner's neglect, or unforeseeable causes beyond the contractor's control. On October 22, 1971, Higgins received notice to proceed. Work commenced on October 28, 1971.

Progress on the project was impeded by construction of a freeway and access ramp above the proposed sewage line, the City's failure to obtain the necessary right of ways, and the City's determination to change twice the location of the lagoons after commencement of work at each previous location.

According to the City, the trial court "misapplied the evidence" and erred in finding Higgins completed the contract within a reasonable time.[1] The City claims this led to an erroneous ruling entitling Higgins to $17,600 in liquidated damages.

The evidence must be evaluated in the light most favorable to the prevailing party, *Ute-Cal Land Development Corp. v. Sather,* Utah, 605 P.2d 1240 (1980); *Hardy v. Hendrickson,* 27 Utah 2d 251, 495 P.2d 28 (1972). When the evidence is in conflict, as in the instant case, we presume the court relied on the evidence supporting its findings. *Fillmore City v. Reeve,* Utah, 571 P.2d 1316 (1977); *Robertson v. Hutchinson,* Utah, 560 P.2d 1110 (1977).

One who causes a delay is not entitled to recover for a resulting failure to meet completion dates, even under a liquidated damages provision.[2] *United States v. United Engineering & Contracting Co.,* 234 U.S. 236, 34 S.Ct. 843, 58 L.Ed. 1294 (1914); *Carter v. Sherburne Corp.,* 132 Vt. 88, 315

---

1. The City, viewing the evidence differently from the court, calculates a completion date substantially earlier than the actual completion date.

2. Even when an owner is not entirely responsible for the delay, but has contributed thereto, he may be precluded from obtaining liquidated damages. See *Peter Kiewit Sons' Co. v. Pasadena City Junior College District of Los Angeles,* 59 Cal.2d 241, 28 Cal.Rptr. 714, 379 P.2d 18 (1963). Also see 5 Williston on Contracts § 789 (3rd ed. 1961).

A.2d 870 (1974), see also 13 Am.Jur.2d, *Buildings and Construction Contracts*, § 48.

Although the evidence is conflicting, the lower court's finding that the June 1973 completion date was reasonable and justified is substantiated by evidence of the City's delay in making the lagoon site available, failure to anticipate the effect of the new freeway on construction, and failure to obtain certain necessary permits in a timely fashion.

Defendant also asserts the contract was divisible and that delays on one portion did not affect work on the remainder. But since the matter was not raised in the trial court, it would be inappropriate for this Court to address the issue. *Shayne v. Stanley & Sons, Inc.*, Utah, 605 P.2d 775 (1980); *Park City Utah Corp. v. Ensign Co.*, Utah, 586 P.2d 446 (1978).

We conclude the lower court correctly found defendant not entitled to withhold liquidated damages.

The City's second contention is that the trial court erred in awarding plaintiff $23,313.72 damages for increased labor expense between July 1, 1972, the effective date of the new union contract, and the end of June 1973, the completion date of the project. Absent the delays encountered, the sewer system would have been completed prior to the effective date of the new union contract. The City again reargues the facts stressing particular portions of the record and ignoring the testimony relied on by the lower court. The evidence supports the trial court's finding that the City caused the delays which resulted in plaintiff's obligation to pay higher wages. We find the court properly awarded damages for increased labor expense.

The City next argues that Higgins is not entitled to damages for increased wages on projects paid on a lump sum basis since that basis was negotiated after the wage increase went into effect. The record shows, however, that the change to a lump sum basis was merely an accounting matter and not a contract renegotiation resulting from increased wage rates.

The City's fourth contention is that the trial court erred in awarding Higgins damages for loss of efficient use of men and machines during the 1972–73 winter. The City asserts the award could only result from a judicial rewriting of the contract, since there was no contractual compensation for efficiency loss and no obligation to proceed with work during inclement periods. The City's position is incorrect; the award is appropriate under the law of damages.

Damages may be recovered for loss of efficiency as a natural consequence of the breach of a construction contract. See *Luria Brothers & Co. v. United States*, 369 F.2d 701, 177 Ct.Cl. 676 (1966); *Abbett Electric Corp. v. United States*, 142 Ct.Cl. 609, 162 F.Supp. 772 (1958). The delays resulted from the City's failure to furnish the proper right of ways, easements, and a proper location for the lagoon. The consequential delays forced the work into an unanticipated second winter, presenting unfavorable work conditions. We find the award for lost efficiency appropriate in this instance.

The fifth contention is error in an $11,556.99 damage award for the increased cost of gravel which was used instead of excavated material to backfill trenches crossing the state highway. Because of inadequate inspection by the City, the State assigned its own inspector to the project. He determined that the excavated material generally used throughout the project to backfill trenches was not suitable for the sewer lines in the trenches crossing the state highway. As a result, Higgins was obligated to acquire and use gravel to fill these trenches. Consequently, the amount of gravel backfill actually used was substantially greater than the amount anticipated in the contract. Although the use of gravel backfill under the State highway was initially unanticipated by both parties, the contract provision providing a per cubic yard price of $3.81 for gravel backfill under pipes can be read to apply to this use. In any event, the lower court found Higgins

incurred this additional expense in compliance with the contract and was entitled to reasonable compensation therefor. We agree.

In the absence of other evidence, the court properly applied the $3.81 contract price as a reasonable unit price to cover the additional expense. We therefore affirm the award of damages on this issue.

■ The City also asserts error regarding a portion of the $6,256.12 awarded Higgins for work performed at an ill-chosen lagoon site subsequently abandoned by the City. The abandonment of the site did not occur until after pipe was purchased and a substantial amount of work was done. The City accepts liability for certain expenses incurred at the abandoned site but objects to others, including pipes stolen or broken at the abandoned site and the moving of equipment and materials. In support of its claim, the City refers to contract provisions establishing the City's right to suspend work without compensation to the contractor and the contractor's responsibility for replacing broken or lost materials. Attention is also directed to the absence of a provision allowing compensation for moving equipment. According to the City, this implies that payment of the unit price includes the expense of moving the equipment.

The trial court was correct in placing liability on the City. The expenses incurred did not result from a suspension of work; indeed, the City, by accepting liability for a portion of the damages acknowledges the right of the contractor to recover expenses incurred at the abandoned site. The City's error in selecting an inappropriate lagoon site led to extra work and expense which fall outside the contractual terms. There is substantial evidence in the record to support the conclusion that these expenses were reasonable and would not have been incurred but for the City's failure to provide the contractor with an appropriate site.

■ Finally, the City avers the court erroneously awarded $2,393.25 for work done at the freeway crossing. There is a substantial dispute concerning the extent to which the parties contemplated that labor and expenses would be affected by the new freeway and access ramp. It is the City's contention that no "extra compensation" beyond the terms of the contract should be allowed for expenses incurred as a result of the new freeway. Higgins, however, did not seek extra compensation beyond the scope of the contract. Substantially, his claim is merely for the unit contract price for the actual number of yards of gravel involved in the construction. This expense properly arose in carrying out the contract. Under a contract which provides for unit price payment, a contractor is entitled to compensation for each necessary unit completed in fulfillment of the contract. *Cf. Wilson v. Salt Lake City,* 52 Utah 506, 174 P. 847 (1918). Therefore, since no issue is raised as to the actual number of the yards completed, or the reasonableness of the $3.81 price, we reject defendant's contention of error on this matter.

Affirmed. No costs awarded.

HALL, C. J., and HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.